

**IT IS ORDERED as set forth below:**

**Date: September 22, 2023**

_____

**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | CASE NO. **22-56352-PMB** |
| **MIRIAN HELEN MCGEE,** | : | |
| | : | CHAPTER 13 |
| Debtor. | : | |
| _____ | : | |
| | : | |
| **MIRIAN HELEN MCGEE,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **22-5139** |
| **WORLD BUSINESS LENDERS, LLC, and its** | : | |
| **wholly-owned subsidiaries, WBL SPO I, LLC,** | : | |
| **WBL SPO II, LLC, and WBL SPE III, LLC,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

### <u>ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Mirian Helen McGee, the above-named Debtor and Plaintiff herein (the "<u>Debtor</u>" or the

"<u>Plaintiff</u>"), commenced this Adversary Proceeding (the "<u>Adversary Proceeding</u>") through the

filing of a four-count *Complaint* on September 22, 2022 (Docket No. 1)(the "Complaint"). [1]

Before the Court is the *Defendants' Motion For Judgment On The Pleadings And Brief In Support Thereof* filed by the Defendants World Business Lenders, LLC, WBL SPO I, LLC, WBL SPO II, LLC, and WBL SPE III, LLC (collectively, the "Defendants") on April 13, 2023 (Docket No. 13)(the "Motion"), under Federal Rule of Civil Procedure ("Rule") 12(c), applicable herein through Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b).   In response to the Motion, the Debtor filed *Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings* (Docket No. 15) on May 18, 2023 (the "Response"), and the Defendants filed *Defendants' Reply Brief in Response to Defendant's Motion for Judgment on the Pleadings* on June 13, 2023 (Docket No. 16)(the "Reply").

In the Complaint, the Debtor asserts the following claims for relief:

(1) First Claim for Relief - *Objection to Claim – 11 U.S.C. § 502(b)(1) – Disallowance of Claim – Unenforceable as Usurious under the True Lender Doctrine*;

(2) Second Claim for Relief - *Disallowance of Claim – 11 U.S.C. § 502(d)* (Debtor allegedly received no consideration in exchange for the subject Mortgage (as defined below, p. 4, *infra*), and original lender/assignor received an avoidable transfer)(citing 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B), and 550 as well as Fla. Stat. §§ 726.106 *et seq.*)(constructively fraudulent transfer);

(3) Third Claim for Relief - *Disallowance of Claim - 11 U.S.C. § 502(b)(1) – Undisclosed Terms are Unenforceable and Unconscionable* (alleged lack of disclosure that risk of exposure

---

[1] The Defendants filed their *Answer of Defendants World Business Lenders, LLC, WBL SPO I, LLC, WBL SPO II, LLC, AND WBL SPE III, LLC* on October 24, 2022 (Docket No. 4)(the "Defendants' Answer").

was not in fact capped at $75,000 when actual amount was $144,789.97 plus accruing interest as part of asserted predatory loan scheme); and

(4) <u>Fourth Claim for Relief</u> - *Disallowance of Claim - 11 U.S.C. § 502(b)(1) – Unjust Enrichment* (inequitable to permit Defendants to assert an allowed claim against the property of the Plaintiff's bankruptcy estate because such claim is based on an invalid, usurious, and unconscionable third-party contract (the "Note," as defined, *infra*) that the Plaintiff never signed).

The Defendants contend that judgment should be granted in their favor on the pleadings and the Complaint should be dismissed because it is an attempt by the Debtor to re-litigate the same claims previously adjudicated in a judicial foreclosure action filed by Defendant WBL SPO I, LLC ("<u>WBL SPO I</u>") regarding enforcement of its lien rights.

## I.      Standard of Review and Procedural Posture

The Defendants' request dismissal of the Adversary Proceeding based on Rule 12(c), which provides that "[a]fter the pleadings are closed—but early enough to not delay trial—a party may move for judgment on the pleadings."  *See also* Fed. R. Bankr. P. 7012(b) (incorporating Rule 12(b)-(i) into adversary proceedings).   Entry of judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).   Moreover, when reviewing a motion for judgment on the pleadings, the court accepts all well-pleaded facts as true and views them in the light most favorable to the nonmoving party opposing the entry of judgment.  *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022), citing *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1301 (11th Cir. 2001).

3

The standard of review for a motion for judgment on the pleadings is the same as a motion to dismiss under Rule 12(b)(6).  *See In re Sullivan*, 2017 WL 2963370, at *2 (Bankr. N.D. Ga. July 11, 2017).  Under Rule 12(b)(6), the standard is whether a complaint contains sufficient factual allegations "'to state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009)(quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 555 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)).  Dismissal is also appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

## II.    **Background**

On April 2, 2019, the Debtor executed a *Mortgage, Assignment of Leases and Rents and Security Agreement* (the "Mortgage Agreement")[2] with Axos Bank, a federal savings bank ("Axos"), as mortgagor pledging as collateral one unit of a duplex located at 2345 NW 65th Street, Miami, Florida (the "Property").[3]  The purpose of the Mortgage Agreement was to furnish collateral in connection with a Business Promissory Note and Security Agreement in the original principal amount of $75,000 (the "Loan").  The Loan was taken out by the Debtor's son, Michael Eugene McGee, Jr. (the "Debtor's Son"), on behalf of Arc Michael Logistics, LLC ("AML"),  a

---

[2] A copy of the Mortgage Agreement is attached to the Complaint as Exhibit "A."  An *Addendum to Mortgage, Assignment of Leases and Rents and Security Agreement from Mirian R. McGhee, to Axos Bank, LLC Its Successors and/or Assigns Beneficiary*, also attached to the Motion as "Prior Action, Doc. 3," (the "Mortgage Addendum"), is attached to the Mortgage Agreement itself as Exhibit "B."

[3] At the time the Mortgage Agreement was executed, the Debtor used one unit of the Property as her residence (2345 NW) and leased out the other unit (2347 NW).  The Debtor now lives in this District, and no longer lives in the Property.

Georgia limited liability company solely owned by him.   In 2019, the Debtor's Son submitted a business loan application on behalf of AML through a broker to Defendant World Business Lenders, LLC ("WBL").   WBL notified the Debtor's Son that approval of the Loan was conditioned upon execution of a personal guaranty and a pledge of real property as security.   The Debtor's Son executed a Continuing Guaranty, but since he owned no real estate, he asked the Debtor for assistance.   She agreed to grant a mortgage on the Property as a hypothecated security for the debt evidenced by the Loan to AML.[4]

Shortly after the Loan closed, AML defaulted on its obligations under the Loan.   *See* Demand Letter from WBL SPE III, LLC (as assignee) to AML, dated October 17, 2019, attached as Exhibit "D" to Complaint.   On January 19, 2021, WBL SPO I, which then owned and held the Loan Documents through a series of sales and corresponding assignments, filed a *Verified Complaint* in the Circuit Court of the Eleventh Judicial Circuit In and For Miami-Dade County, Florida (the "Florida Circuit Court"), Case No.: 2021-001359-CA-01 (the "Florida Lawsuit") to recover on the indebtedness due and owing under the Loan.   *See* copy attached to the Motion as "Prior Action, Doc. 3"; *see also* Complaint ¶¶ 34, 40-44.   Among others, the Florida Lawsuit named AML, the Debtor's Son, and the Debtor as defendants,[5] and asserted that the total amount

---

[4] Also attached to the Complaint is a copy of a *Business Loan Summary* as Exhibit "B" (the "Loan Summary"), a copy of the *Business Promissory Note and Security Agreement* (all one document) signed by the Debtor's Son on April 3, 2019, as Exhibit "C" (the "Note"), and a partial copy of an *Assignment of Mortgage, Business Promissory Note and Security Agreement and Other Loan Documents* effective September 13, 2023, as Exhibit "F" (the "Assignment").   The Loan Summary, the Note, and the *Continuing Guaranty, Personal (Unlimited)* signed by Debtor's Son on April 2, 2019 (the "Guaranty") are referred to herein as the "Loan Documents".   Axos assigned its interest in the Loan Documents to WBL pursuant to the Assignment.   Because the Note was not signed until after the Debtor signed the Mortgage Agreement, the Debtor contends it could not be binding upon her.

[5] The Verified Complaint (the "Verified Complaint") was styled as follows: *WBL SPO I, LLC, a Delaware limited liability company, Plaintiff v. ARC MICHAEL LOGISTICS, LLC, a Florida limited liability company; MICHAEL*

5

of $219,454.98 was due and owing based on unpaid principal, interest, prepayment premium, and NSF fees plus a daily accrual of interest, costs, and fees.  The counts asserted in the Verified Complaint included Breach of Contract on the Note, Mortgage Foreclosure, Breach of Contract on the Guaranty, and Foreclosure of Security Interest in Rents.

In connection with the Florida Lawsuit, the Debtor's Son and the Debtor filed *Defendant Michael Eugene, Jr., and Mirian R. McGhee a/k/a Mirian Helene McGee's Answer, Affirmative Defenses, and Counterclaims* on May 5, 2021.   *See* copy attached to the Motion as "Prior Action, Doc. 31."   Among the affirmative defenses, they alleged as follows:

(1) the Loan is illegal and unenforceable under Florida law (Fla. Stat. § 687.03 (*"Unlawful rates of interest" defined; proviso*)) based on its exorbitant Annual Percentage Rate ("APR");

(2) the Debtor is not the borrower and received no consideration for the equitable lien placed on the Property because it is based on a usurious loan and unenforceable for the value asserted in the Verified Complaint; and

(3) the plaintiff as an assignee [WBL SPO I] lacks standing to sue any of the defendants listed in the Florida Lawsuit since on its face the Loan charged a usurious rate of interest (collectively, the "Affirmative Defenses").

Similarly, in the counterclaim the Debtor asserted a violation of Fla. Stat. § 687.147 (*Actions for Damages*) and § 687.04 (*Penalty for Usury; Not to Apply in Certain Situations*)

---

*EUGENE MCGEE, JR., an individual; MIRIAN R. MCGHEE a/k/a MIRIAN HELENE MCGEE, an individual; UNKNOWN SPOUSE OF MIRIAN R. MCGHEE a/k/a MIRIAN HELENE MCGEE, an individual; BOARD OF COUNTY COMMISSIONERS MIAMI-DADE COUNTY, FLORIDA; UNKNOWN TENANT in possession at 2345 NW 65th Street, Miami, Florida 33147; and UNKNOWN TENANT in possession at 2347 NW 65th Street, Miami, Florida 33147, Defendants.*

through the alleged transfer of negotiable paper bearing a usurious interest rate on its face of

98.9771% (the "Counterclaim").   As such, the Debtor contended the Loan is voidable and

unenforceable under Florida law.

On July 18, 2022, the Florida Circuit Court granted *Plaintiff's Motion for Final Summary

Judgment*[6] (the "Florida Summary Judgment Motion") filed on April 13, 2022, and entered its

*Final Summary Judgment of Foreclosure* (the "Foreclosure Judgment") awarding final judgment

in favor of WBL SPO I "against Defendants, AML and Michael McGee, Jr." on a joint and several

basis in the total amount of $358,709.74 (the "Judgment Amount").   *See* copy of Foreclosure

Judgment attached to the Motion as "Prior Action, Doc. 164," pp. 2-3.   WBL SPO I was also

granted judgment to foreclose on the Property as pledged by the Debtor under the Mortgage

Agreement and further, that it held "a lien on the Property for the total sum of the Amounts Due…."

*Id.,* p. 3.   The Florida Circuit Court then ordered the unit at 2345 NW 65th Street to be sold by the

clerk at a public sale in accordance with Fla. Stat. § 45.032022, August 23, 2022, to the highest

bidder for cash.   *Id.,* p. 4.

The Debtor subsequently filed this bankruptcy case under Chapter 13 on August 16, 2022

(the "Petition Date").[7]   Defendant WBL SPO II, LLC ("WBL SPO II")[8] filed a proof of claim

herein regarding the subject indebtedness on September 29, 2022 (the "Proof of Claim"), in the

---

[6] In the Florida Summary Judgment Motion, WBL SPO I specifically raised and addressed the Affirmative Defenses
and Counterclaim.   *See* copy attached to the Motion as "Prior Action, Doc. 117."

[7] No one has alleged that an appeal of the Foreclosure Judgment was filed prior to the Petition Date, or that one has
been filed since.

[8] Axos Bank, World Business Lenders, LLC, and WBL SPO I, LLC were listed on the Proof of Claim as other names
this creditor has used with the Debtor.

amount of $365,229.54 (Claim No. 5)(the "<u>Mortgage Claim</u>").[9]  As noted above, the Debtor filed the Complaint herein on September 22, 2022, seeking to have the Mortgage Claim disallowed on multiple grounds including that it is unenforceable since the Mortgage Agreement is allegedly void under Florida usury laws, its terms are unconscionable, and the Defendants are unjustly enriched thereby.[10]  The Debtor also seeks to disallow the Mortgage Claim on the ground that the Mortgage Agreement transaction is a constructively fraudulent transfer and should be voided.[11]

### III.    Discussion

**A.  Preclusion under *Res Judicata* – Legal Standard**

In the Motion, the Defendants argue that the Adversary Proceeding is subject to dismissal because the issues raised in the Debtor's Complaint were presented to, and litigated and decided in the Defendants' favor in, the Florida Lawsuit, and those findings are binding here under *res judicata* or, alternatively, collateral estoppel.   These issues include the lawfulness of the Florida Lawsuit, the validity of the lien interest asserted under the Mortgage Agreement, WBL SPO II's

---

[9] In the Proof of Claim, WBL SPO II describes the series of assignments by which it now claims to hold and own the Loan Documents and its basis for asserting a secured claim based on the Loan in this bankruptcy case and the recorded mortgage against the Property.

[10] As discussed further below, the Debtor also alleges that "[t]he 'rent-a-bank' arrangement between WBL, LLC and Axos [was] orchestrated solely to enable WBL, LLC, a non-bank, to claim that it received an assignment from a 'real bank,' and with the assignment, [to] get protections of a preemptive provision within the National Bank Act, codified as 12 U.S.C. § 85, which authorizes a FDIC insured national bank 'to charge on any loan' interest at the rate allowed by the laws of the State of the transaction, or the State where the bank is 'located.'"   Complaint, ¶ 63.   On this basis, the Debtor asserts the rate-cap evasion should be rejected under the true-lender doctrine.   The Debtor further alleges that Georgia law properly applies to the Note, and she is entitled to a judgment declaring the Loan usurious and that only the principal amount is due as the interest is forfeit.   Complaint, ¶¶ 93-96.

[11] The Debtor states that, according to the Florida Lawsuit, during the first three (3) months of the loan (May 10, 2019 through August 19, 2019), AML remitted loan payments to Defendants totaling $27,267.26, of which amount, $20,327.13 was applied to interest.   Complaint, ¶ 44.

right to foreclose on the Property, and the lack of merit in the Debtor's arguments for disallowing the Defendants' Mortgage Claim.

Comparing the respective substance of the counts contained in the Complaint and the allegations in the Counterclaim and the Affirmative Defenses asserted in the Florida Lawsuit, the Defendants argue that the underlying basis for each of the former has already been adjudicated through consideration of the latter.  Motion, pp. 11-12.  Specifically, the Defendants rely on language in the Foreclosure Judgment stating that the "allegations contained in Plaintiff [WBL SPO I]'s Complaint have been proven by competent evidence and the equities are with the Plaintiff."  Motion, citing Foreclosure Judgment, p. 1; s*ee also* pp. 2-3, *supra* (headings of Complaint) & p. 6, *supra* (description of Affirmative Defenses and Counterclaim).[12]

Under *res judicata*, "a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action."  *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001).   In deciding whether to accord preclusive effect to a state court judgment under *res judicata*, federal courts "'apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation.'"   *Green v. Jefferson Cty. Comm'n*, 563 F.3d 1243, 1252 (11th Cir. 2009)(citations omitted).   Because the Florida Lawsuit resulted in the ruling set forth in the Foreclosure Judgment, Florida's principles of *res judicata* apply.   The test under Florida law is stated as follows: "'(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3)

---

[12]  At their core, the Affirmative Defenses and Counterclaim center around the Debtor's allegation that the Mortgage Agreement is unenforceable and voidable because it was given to secure a usurious loan.

the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases.'" *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir.1986)(applying Florida law), quoted in *In re Tomasevic*, 275 B.R. 86, 97 (Bankr. M.D. Fla. 2001).[13]  "'*Res judicata* precludes reexamination not only of liability for a debt, but also its amount as well.'"  *Ob/Gyn Solutions, L.C. v. Six (In re Six),* 80 F.3d 452, 456 (11th Cir. 1996), quoted in *Tomasevic, supra*, 275 B.R. at 96.

Res judicata is not a defense under Rule 12(b), but an affirmative defense that generally must be raised by answer under Rule 8(c) and heard at trial.  Such a defense may be raised by motion rather than by answer, however, when its existence can be evaluated on the face of the complaint.[14]  Further, "[c]ourts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage."  *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n. 4 (11th Cir. 2015), citing Fed. R. Evid. 201 and *Lozman, supra,* 713 F.3d 1066, 1075 n. 9 (judicial notice of documents from state court eviction action was appropriate in evaluating whether federal counterclaim was barred by *res judicata*).  Here, the Defendants refer to *res judicata* in Paragraph 149 of their Answer and raise it as their Eleventh Affirmative Defense.

---

[13] Under Florida law, *res judicata* also applies when there is a similarity in the following: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) 'identity of quality in person for or against whom claim is made.'" *Fla. Bar v. St. Louis*, 967 So.2d 108, 119 (Fla. 2007)(citations omitted), quoted in *Woide v. Fed. Nat'l Mortg. Ass'n*, 705 F. App'x 832, 835 (11th Cir. Aug. 9, 2017).  *See also Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1370 (M.D. Fla. 2014), *aff'd sub nom. Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc.*, 626 F. App'x 935 (11th Cir. 2015), quoting *Lozman v. City of Riviera Beach, Fla.,* 713 F.3d 1066, 1074 (11th Cir. 2013)(quoting *Andela v. Univ. of Miami,* 692 F.Supp.2d 1356, 1371 (S.D. Fla. 2010))(adding requirement that the original claim was disposed on the merits).

[14] *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982), citing *Sherwood v. Pearl River Valley Water Supply Dist.*, 427 F.2d 717, 718 (5th Cir.)(Godbold, J., dissenting), *cert. denied*, 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970); *see also Solis v. Glob. Acceptance Credit Co.*, 601 F. App'x 767, 771 (11th Cir. Jan. 28, 2015).

In addition, on a motion for judgment on the pleadings, the court may consider documents attached to the motion without converting the motion into a motion for summary judgment (and affording an opportunity for full discovery) if the attached documents are central to the claim and undisputed. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 n. 12 (11th Cir. 2014). Undisputed in this setting refers to the absence of a challenge to a document's authenticity. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002), discussed in *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

The Foreclosure Judgment of the Florida Circuit Court is central to this case, and its authenticity has not been questioned.[15] The Defendants do not seek to *use* the Judgment to show that the Debtor's claims are false. Rather, they seek to show that the Debtor's claims have previously been denied (which, as noted above, the Debtor disputes) through the Foreclosure Judgment that granted relief on the subject Loan obligation and authorized the foreclosure sale to proceed to enforce the Defendants' lien rights given under the Mortgage Agreement against the Property to secure the Note. Therefore, the Court will include in its review of the Motion and

---

[15] The Defendants request this Court to take judicial notice of the docket in the Florida Lawsuit. *See, e.g.*, *Universal Express, Inc. v. United States Sec. and Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. April 18, 2006)(citing *Bryant v. Avado Brands*, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999). Further, "a court may take notice of another court's order ... for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir. 1994). The Debtor argues that even though this Court may take judicial notice of the existence of the Foreclosure Judgment in the Florida Lawsuit, the Court may not engage in a determination of what exact fact issues were or were not therein decided by reason of implication from the text of the Foreclosure Judgment for purposes of applying res judicata. *See Bayport Fin. Serv. (USA) Inc. v. BayBoston Managers, LLC*, 2023 WL 2633298, at *8 (S.D. Fla. Mar. 3, 2023), *report and recommendation adopted*, 2023 WL 2631502 (S.D. Fla. Mar. 24, 2023), citing *In re Takata Airbag Products Liability Litigation*, 396 F. Supp. 3d 1101, 1129 (S.D. Fla. 2019)(court may not take judicial notice of facts, the truth of which is "gleaned" through transcripts). As discussed below, on its face, the Foreclosure Judgment does not specifically mention or address the Affirmative Defenses or Counterclaim asserted by the Debtor. Thus, according to the Debtor, this Court should not take the absence of an explicit ruling on those defenses or claims as the basis for presumptively concluding herein that the Florida Circuit Court must, therefore, have denied them. As discussed below (*infra*, pp. 11-12), the Court will accept what the Foreclosure Judgment states on its face to be the basis of its ruling.

related pleadings the documents as attached to the pleadings to establish their existence and what they purport to decide.   The Court does not consult them for purposes of adjudicating or establishing their truth with respect to any alleged underlying and/or remaining fact issues in connection with the subject foreclosure.

### B.  Application of *Res Judicata*

*1.   Analysis of Claims Under Res Judicata - Final Judgment on the Merits*

First, as mentioned above, application of *res judicata* requires a final judgment on the merits.   It is apparent upon a review of the pleadings and referenced documents that the parties thoroughly litigated the issues raised by the foreclosure action in the Florida Lawsuit, and the Florida Circuit Court issued the Foreclosure Judgment on the merits.   The amount owed on the Mortgage and Note secured thereby was fixed by the final Foreclosure Judgment.[16]   The Debtor argues, however, that no monetary judgment was entered against the Debtor.   Further, there is no mention of the Affirmative Defenses, or the Counterclaim, in the Foreclosure Judgment and the Florida Circuit Court took no evidence.

In their Reply, the Defendants state that the Debtor is merely attempting to use this Adversary Proceeding to reduce the Judgment Amount so that she may prevent a foreclosure and keep her Property.   Further, all the Debtor's arguments and claims herein were brought before the Florida Circuit Court in the Florida Lawsuit.   As stated in the Mortgage Agreement, the Debtor pledged the Property as security for the entire amount of the debt as due under the Note and there

---

[16] "Once a trial court enters judgment of foreclosure, the judgment 'fixe[s] the validity, priority and extent of [the] debt.'   No additional proof of the debt amount is necessary."   *TD Bank, N.A. v. Graubard,* 172 So.3d 550, 553 (Fla. Dist. Ct. App. 2015)(alterations in original)(quoting *Ahmad v. Cobb Corner, Inc.,* 762 So.2d 944, 946–47 (Fla. Dist. Ct. App. 2000)), quoted in *Aluia v. Dyck-O'Neal, Inc.*, 205 So. 3d 768, 773 (Fla. Dist. Ct. App. 2016).

is no cap or limitation regarding the debt amount on its face. *See* Mortgage Agreement, p. 2.[17]

As the Florida Circuit Court found, "[t]he allegations contained in Plaintiff's Complaint have been proven by competent evidence and the equities are with the Plaintiff." Foreclosure Judgment, p. 1. With respect to the Debtor's argument that this Court may not take judicial notice by implication regarding what the Florida Circuit Court did and did not actually decide, the state court wrote that the Foreclosure Judgment was entered after "having reviewed the Amended Verified Complaint…, the Motion, the record in this case, and the arguments of counsel at the hearing…."[18]

In entering the Foreclosure Judgment, the Florida Circuit Court determined both the validity of the lien granted under the Mortgage Agreement and the right of WBL SPO I to foreclose as a contractual remedy in the event of the failure of payment in full of the amount awarded in the Foreclosure Judgment. The Florida Circuit Court concluded that "the Plaintiff holds a lien on the Property for the total sum of the Amounts Due, superior to all claims or estates of the Defendants on the Property." Foreclosure Judgment, p. 3. To allow the Debtor to proceed on her claims in this Adversary Proceeding would, in practical terms, act to nullify the intended effect of the Judgment, which settled WBL SPO I's right to foreclosure. If successful on her claims in setting aside the Mortgage Agreement or altering the terms of the Loan, the Defendants' remedy of

---

[17] The Business Loan Summary sets out the interest charges over the life of the Loan, which total more than $75,000. *See* Exhibit "B," attached to Complaint. The Debtor states this document was provided to the Debtor's Son but not to her. Complaint, ¶ 27.

[18] In the Florida Summary Judgment Motion, the Defendants addressed the Affirmative Defenses and Counterclaim of the Debtor. *See* Plaintiff's Motion for Summary Judgment, pp. 12-18, "Prior Action, Doc. 117" (arguing Nevada law applies).

recovery on occurrence of default as bargained-for in their Loan Documents, as assigned to WBL

SPO II, and as awarded in the Foreclosure Judgment, would be thwarted.[19]

Citing Fla. Stat. § 702.036(1)(a)(3) and Fla. R. App. P. 9.110(b), the Debtor further

contends that that the Foreclosure Judgment is not final because the thirty (30) day period to file

an appeal had not expired when the bankruptcy case was filed.[20]   Thus, according to the Debtor,

the Foreclosure Judgment remains subject to appellate review.   Further, she argues that even

though filing an appeal is now stayed under 11 U.S.C. § 362(a)(1), the right to appeal is preserved

until the stay is terminated or modified.   *See Hewett v. Wells Fargo Bank, N.A.*, 197 So. 3d 1105,

1108 (Fla. Dist. Ct. App. 2016)(considering tolling effect of 11 U.S.C. § 108(c) on procedural

filing deadline of appeal under Florida law).   Upon closer review of that case, however, although

the state court recognized the potential issue its dismissal of an appeal filed post-bankruptcy could

raise (*i.e.*, how to measure jurisdictional deadlines in connection with appeals once the automatic

stay terminates), it concluded that it did not have authority to address the issue—certainly not in

the manner the Debtor suggests.[21]

---

[19]  As further asserted by the Defendants, any argument by the Debtor that she was not a party to the Note is merely an attempt to relitigate her obligations as found by the Florida Circuit Court as it runs counter to the terms of the Mortgage Addendum p. 58 of 80 (emphasis supplied) that, on its face, describes the Debtor's integral role with respect to this loan transaction.   As noted above, the Debtor insists the Note is not binding upon her since it was not signed until the day after the Debtor signed the Mortgage Agreement.

[20] As noted above, the Foreclosure Judgment was entered on July 18, 2022, and the Petition Date was August 16, 2022.

[21] In *Hewett*, *supra*, the Debtor filed his appeal seven (7) days after he had filed for bankruptcy relief.   Absent bankruptcy, the appeal would have been timely, but with the bankruptcy filing the court held that the appeal was void due to operation of the automatic stay.

In any event, "[u]nder Florida law, a judgment entered by a court of competent jurisdiction has preclusive effect notwithstanding a pending appeal."  *CCB, LLC v. BankTrust*, 552 F. App'x 963, 964 (11th Cir. Jan. 17, 2014)(citing *Reese v. Damato*, 44 Fla. 692, 698, 33 So. 462, 464 (1902)), cited in *Rohe v. Wells Fargo Bank, NA*, 2020 WL 7200671, *5 n. 4 (S.D. Fla. Dec. 7, 2020).   The preclusive effect of a prior judgment is not affected unless an appellate court tries the case *de novo*.   *CCB, supra.*   Although an appeal is not currently pending in this case, the fact that the appeal period had not expired by the Petition Date does not affect the finality of the Foreclosure Judgment for purposes of according preclusive effect to it herein, just as if an appeal had been filed and stayed.   Here, the Florida Circuit Court entered a final judgment that foreclosed the Property in question and an appellate court has not tried the case *de novo*.

On this basis, the Court concludes that the Foreclosure Judgment may be treated as a final judgment on the merits for purposes of *res judicata* herein.

### 2.  *Jurisdiction of the State Court*

Next, with respect to the second element, no one has challenged the jurisdiction of the Florida Circuit Court in connection with the entry of the Foreclosure Judgment on grounds of either subject matter or personal jurisdiction, and this Court finds no basis for concluding otherwise based on a review of this matter.[22]

### 3.  *Identity of the Parties*

Regarding the third element, the Court concludes that the "parties, or those in privity with them," as well as the parties' identity and capacity are the same in both the Florida Lawsuit and

---

[22] *See Ebeh v. St. Paul Travelers*, 459 F. App'x 860, 861 (11th Cir. March 1, 2012)(finding that Florida state courts are courts of competent jurisdiction); *Epuna v. MERS*, 2015 WL 11181729, at *2 (S.D. Fla. Feb. 9, 2015).

the Adversary Proceeding, as both suits involve the Debtor and WBL SPO I, the plaintiff in the

Florida Lawsuit, and its assignee, WBL SPO II.   The Debtor is a party to both suits but disputes

that the identity of the creditor is the same, questioning the purported assignments of the Loan

Documents and the true party.   It has been held, however, that "'[p]arties are in privity for res

judicata purposes...if they have mutual or successive relationships to the same rights or property.'"

*U.S. Bank Nat'l Ass'n v. Hefter*, 2017 WL 6949218, at *6 (S.D. Fla. Nov. 29, 2017), *aff'd sub*

*nom. U.S. Bank Nat'l Ass'n v. Larsen*, 736 F. App'x 775 (11th Cir. May 25, 2018)(citations

omitted).   Here, it appears that privity exists between the Defendants because they are preceding

and succeeding owners of the contract and lien rights created under the Loan Documents as

executed and assigned and share a mutuality of interest with respect to the Debtor in this matter.[23]

### 4.  Same Causes of Action

Finally, turning to the fourth element, the Court concludes that the same causes of action

or "the thing sued for" are involved in both the Florida Lawsuit and the Adversary Proceeding as

the same loan transaction at issue herein was the subject matter of the Florida Lawsuit.

### a.  The First, Third, and Fourth Claims for Relief[24]

As previously described above, in the First Claim of the Complaint (¶¶ 50-102), the Debtor

asks that the Mortgage Claim be disallowed because it violates Florida usury laws and is therefore

---

[23] Regarding a dispute as to whether a bank was entitled to foreclose based on alleged defects in assignments of debtors' mortgage, a court held "[a]ll that was required was for Nationstar to show that it was the 'holder' of the note." *In re Lester*, 603 B.R. 187, 190 (Bankr. M.D. Fla. 2019).

[24] For ease of analysis, the Court will address the Claims for Relief in separate sections.   The Second Claim for Relief is addressed below.

unenforceable.[25]   In the Prior Action Answer, the Debtor asserted in her first Affirmative Defense that the "Promissory Note is illegal and therefore unenforceable" because the interest rate on the loan was usurious.  *See* "Prior Action, Doc. 31."   The Counterclaim similarly alleged that the Loan was usurious and asked the Florida Circuit Court to void the Mortgage Agreement and surety agreement.

In the Third Claim of the Complaint (¶¶ 128-51), the Debtor states the Defendants' claim should be disallowed because it is unenforceable and unconscionable as there is a "failure of consideration" and important terms of the contract, such as the interest rate and prepayment penalties, were undisclosed, unfair, and unreasonable.   In the Prior Action Answer, the Debtor stated in the second Affirmative Defense that the "Mortgage is not enforceable against the [Debtor] for the value stated" because she was not the borrower and "received no consideration for the equitable lien" and the lien "is based on an illegal usury loan."  *See* "Prior Action, Doc. 31."

In the Fourth Claim of the Complaint (¶¶ 152-58), the Debtor alleges that the Defendants' claim would unjustly enrich the Defendants because the Debtor "did not receive any consideration or value in exchange for the Mortgage," and the "claim is based upon an invalid, usurious, and unconscionable third-party contract that the [Debtor] never signed."   Further, "[a]lthough the Mortgage document states that the Property secures a loan with a maximum amount of $75,000.00, the circumstances are such that equity should not permit the Defendants, who now claim a debt

---

[25] Arguments that Florida usury law applies, and not Nevada law as Defendants contend, could also have been raised as part of the Florida Lawsuit, especially given what was at stake in terms of the consequences of a judgment of foreclosure.   In fact, the Defendants raised this issue in the Florida Summary Judgment Motion.   "Prior Action, Doc. 117," pp. 13-14, 17.

owed in excess of $358,709.74, to become unjustly enriched at the expense of the Debtor and the estate."   Complaint ¶ 158.   *See also* Counterclaim.

The Debtor argues that the claims set forth in the Complaint are not precluded by the Foreclosure Judgment because they were not adjudicated in the Florida Lawsuit.   Here, the Debtor states that under Florida law, as a non-obligor defendant in an *in rem* foreclosure action, she was not required to assert all related tort claims as compulsory counterclaims.   *See Aguilar v. Southeast Bank, N.A.*, 117 F.3d 1368 (11th Cir. 1997), certified question answered by 728 So.2d 744 (1999), conforming to answer, 177 F.3d 1226 (11th Cir. 1999).[26]   On this authority, the Debtor urges that because she was not obligated to litigate her suretyship claims against WBL as the "true-lender in an unconscionable rent-a-bank scheme" in the Florida Lawsuit in connection with the foreclosure on her Property, those claims are properly brought here.   Citing the Illinois case of *Carey v. Neal, Cortina & Assoc.*, 216 Ill. App. 3d 51, 58-9 (Ill. App. Ct. 1991), the Debtor further argues that *res judicata* does not apply in this case because the claims asserted in the Complaint were not required to be litigated in the Florida Lawsuit or otherwise be forever lost.[27]   Her claims do not constitute a collateral attack upon the Foreclosure Judgment, the Debtor insists, because the

---

[26] In *Aguilar*, doctors who were named as defendants in an *in rem* foreclosure action based on their ownership interest arising from a purchase agreement in connection with a medical center development project, were allowed to continue a separate state court action against the bank for tortious interference with contractual relationship after the bank and developers had settled the bank's foreclosure action.   The doctors' suit was based on damages resulting from the bank's alleged breach of a loan extension agreement with the developer.   The loan extension agreement had been the subject of the developer's counterclaim against the bank in the foreclosure action.   *Aguilar v. Southeast Bank, N.A.*, 728 So. 2d 744, 745 (Fla. 1999).

[27] In *Carey*, the claims at issue were not asserted in the prior litigation and the analysis centered on whether they were subject to preclusion because they "could have been" asserted.   The court reasoned that even if the claims arose out of the same transaction, preclusion would not be afforded to the prior finding in a subsequent suit unless the subsequent judgment would, in effect, nullify or undermine the prior ruling.   Thus, even though a defense of fraud regarding a mortgage foreclosure and corresponding claim to rescind the underlying note or assert a claim to the real estate was barred, a claim for tort damages based on fraudulent misrepresentation was not.

18

lender remains free to collect on it in its entirety against the original borrower and guarantor—

AML and the Debtor's Son.[28]

Of course, in this case the Debtor did file Affirmative Defenses and a Counterclaim in the

Florida Lawsuit.   In addition, as discussed above, she was no stranger to the Loan transaction, as

she was the mortgagor.   Any relief this Court could order with respect to the finding of the Florida

Circuit Court that was contrary to that court's ruling would act to nullify the effect of the

Foreclosure Judgment.   Unlike the parties in *Aguilar*, in this case, although the Debtor may not

have been an "obligor on the original note," it cannot be said that she was not obligated under the

Mortgage Agreement.   As distinguished from the tort claimants in *Aguilar*, here the Debtor did

have a direct relationship with the original lender and further, her arguments against enforcement

of the Mortgage Agreement in relation to the foreclosure do appear to arise from the same operative

facts and transaction as the claim in the action to foreclose.

Of course, in this case the Debtor next contends that the Florida Lawsuit never adjudicated her claims with

respect to the *making* of the Mortgage Agreement or the *extent* of the Defendants' Mortgage Claim

---

[28] Even if Illinois law governed this issue herein, the precedential value of *Carey* has been called into question.

> In *Carey,* the plaintiff sued the defendant for fraud in selling real estate to the plaintiff.   *Carey,* 216
> Ill.App.3d at 53.   While the plaintiff's fraud suit was pending, a Florida court entered a judgment
> of foreclosure in favor of the defendant. *Id.*   While this court held that the plaintiff's fraud claims
> were not barred by *res judicata* (*id.* at 64), it did so via an outdated test.   Specifically, this court
> stated that, "when analyzing the identity of causes of action for *res judicata* purposes, the second
> suit is not barred if the proof of its elements differ from the proof required to prove the prior action."
> *Id.* at 55.   But the Illinois Supreme Court abandoned that test when it adopted the transactional test
> in *River Park,* 184 Ill.2d at 307–13.   And, according to the dissent in *Carey, res judicata* should
> have barred the plaintiff's fraud claims under the ***transactional test***.   *Carey,* 216 Ill.App.3d at 64–
> 65 (Jiganti, P.J., dissenting) (emphasis supplied).   Thus, *Carey*'s analysis of the identity-of-causes-
> of-action element is no longer persuasive.

*220 Remington Co., LLC v. U.S. Bank Nat. Ass'n*, 2016 IL App (1st) 151462-U, ¶ 42.

in bankruptcy.   The Judgment Amount entered against the Debtor's Son and AML, she maintains, has no or little bearing on the Mortgage Claim filed in this bankruptcy case because she was not a party to the Note and further, the Mortgage Agreement itself only reflects hypothecated collateral up to $75,000.   In addition, the Mortgage Agreement was unaccompanied by any disclosure that her suretyship exposure was actually not less than $144,789.97.

Likened to Truth in Lending disclosures, the Debtor continues, "qualified written disclosures…are critical components of any suretyship agreement" to show the true extent of a secondary obligor's undertaking.   Response, p. 13 of 19, quoting *In re Synergy Inv. Grp., LLC*, 2014 WL 2006571, at *4 (Bankr. N.D. Ga. Mar. 18, 2014).   A hypothecation agreement must "identify the debt which is the subject of the promise, indicate knowledge of both the amount promised to be paid and the time the debt becomes due."   *Id*.   Linkage to additional obligations between the lender and borrower, the Debtor insists, is insufficient to bind a surety.   Further, reference to the Note in this case is untenable since it was not even executed until one day after the Mortgage Agreement.

In the Reply, the Defendants state that the Mortgage Agreement satisfies these requirements and further, that no additional disclosure was necessary in this instance.[29]   This

---

[29] The Defendants also assert that as a commercial business loan, to the extent arguably applicable through the Debtor's argument, they were not bound by the disclosure requirements of the Truth in Lending Act ("TILA"). Although TILA does not apply to extensions of credit to entities for business or commercial purposes, it may apply in circumstances where the lender knows the loan will be assumed by a non-commercial entity.   *See Adiel v. Chase Fed. Sav. & Loan Ass'n*, 810 F.2d 1051, 1052 (11th Cir. 1987).   Of course, here, the transaction did not contemplate that the Debtor would assume the Loan, but that she would stand as surety.   Here, too, the Mortgage Addendum provided that the lender could exercise all rights and remedies against her as if she had executed the underlying Note.   In any event, to the extent the Debtor granted a lien in her home or other collateral to secure the debt in question and did become obligated thereon, "those actions would not 'transform the loan from an exempted transaction to one within the ambit of the [TILA],'" since the purpose of the loan controls not the nature of the collateral, and here, the Loan was for a business purpose.   *Roberts v. FNB S. of Alma, Georgia*, 716 F. App'x 854, 857 (11th Cir. Nov. 14, 2017), quoting *Sherrill v. Verde Capital Corp.*, 719 F.2d 364, 367 (11th Cir. 1983).

Court's task is not to determine the merits of such arguments, and it must accept the well-pled allegations of the Complaint as true.    Admittedly, the Loan transaction in this case offered more documentation in terms of its granting language than that offered in *Synergy, supra*, where a surety's note only apparently referenced the note of the principal obligor.    Moreover, as the court observed in *Synergy Inv., supra*, "[t]he question turns, then, to whether the language—'Cross Collateralized with Loan # 61205619–15'—validly pledges Synergy's property for the debts of Property Solutions, so that the dragnet clause—or other provision within the Deed—operates to attach Property Solution's deficiency as an obligation secured by Synergy's allegedly pledged Collateral."    2014 WL 2006571, at *3.

Such an issue, *i.e.*, the validity of the hypothecation agreement set forth in the Mortgage Agreement based on an allegedly unlawful loan, is relevant to the question of its enforcement in connection with the remedy of foreclosure sought by right on the alleged default of the borrowers under the Note.    *See also* Counterclaim (alleging violation of Fla. Stat. §§ 687.147 & 687.04 against lendor-assignor Axos Bank and assignee WBL SPO I); and *see Third-Party Complaint for Damages* filed by AML, the Debtor's Son, and the Debtor against Axos Bank in the Florida Lawsuit (the "Third Party Complaint")(attached to Debtor's Florida Answer, "Prior Action, Doc. 31," pp. 29-35)(alleging similar claims).    This issue was either necessarily considered or should have been raised in the Florida Lawsuit as part of the foreclosure process.    As previously noted, the Debtor did not choose to appeal the Foreclosure Judgment.    Instead, she filed this bankruptcy case.

The Debtor further asserts that she retains an equitable right to redeem the Property and this Court may properly determine the amount required for the Debtor to redeem the Property as

part of the claims objection process in bankruptcy.    Such a review, she maintains, would not affect the validity of the Foreclosure Judgment.    *See Randall v. Bank One Nat'l Ass'n (In re Randall)*, 358 B.R. 145, 161 (Bankr. E.D. Pa. 2006); *see also In re Anson*, 457 B.R. 130 (Bankr. M.D. Fla. 2011 (debtor-guarantor's objection to claim sustained despite prior judgment awarding amount to mortgagee). [30] This review for disallowance may encompass such grounds as avoidability, illegality, interest forfeiture, recoupment, and/or equitable reformation.    Debtor's Response, pp. 14-15 of 19.    Because *res judicata* is an equitable doctrine the application of which has been held discretionary by Florida courts, when it would work a manifest injustice, the Debtor argues it should not be applied here as it would allow the Defendants to recover more than they are legally entitled to claim.    *See In re Namal Enters., LLC*, 574 B.R. 300, 308 (Bankr. M.D. Fla. 2017). [31]

The Debtor further alleges that "although the original documents suggest, in form, that 'Axos Bank' is the original lender and mortgagee, Axos Bank was only the nominal lender, as the 'true lender' and 'true mortgagee' has always been WBL, LLC."    Complaint, ¶ 52.    The Debtor contends that the Loan herein was allegedly made as part of a "rent-a-charter scheme" by which WBL, LLC, a non-bank entity, could claim that it received an assignment from a 'real bank' and thereby "evade state interest rate caps" in Florida as compared to Nevada.    Complaint, ¶¶ 53-56.

---

[30] As a general matter, the Court appreciates the reasoning in *Anson, supra*, 457 B.R. at 134-35, in terms of upholding principles of equity and justice to prevent a windfall.    Its facts, however, where a mortgagor was prevented from raising a payment defense in a foreclosure proceeding, but later allowed to assert same in the context of a bankruptcy claim objection, challenging the amount of the judgment and not its validity, differs from the situation presented herein.

[31] Even if this Court followed the distinction drawn in *Tomasevic, supra*, 275 B.R. at 101, between claims going to the making of a loan, which are not barred by *res judicata*, and claims going to the obligations under a loan, which are precluded, proper grounds must be alleged that this Court can and should hear such claims as opposed to a state court.    Each of the Debtor's arguments ultimately return to the issue of whether the Debtor is liable for the full interest amount claimed by the Defendants.

Through this assignment, the non-bank entity would obtain the "protections of a preemptive provision within the National Bank Act, codified as 12 U.S.C. § 85, which authorizes a FDIC insured national bank 'to charge on any loan' interest at the rate allowed by the laws of the State of the transaction, or the State where the bank is 'located.'"    Complaint, ¶ 63.

According to the Debtor, "[n]o legal basis exists under 12 U.S.C. § 85 or otherwise, for application of Nevada law to preempt interest caps on Georgia and Florida loan transactions." Complaint, ¶ 74.    Since "the interest charged under the Note and Mortgage was illegally usurious under applicable state law, the claim of Defendants must be disallowed under 11 U.S.C. § 502(b)(1)."    Complaint, ¶ 75.    Further, the Debtor contends, even if Axos was located in Nevada, the usury laws of Nevada are not applicable or should be disregarded under "the true-lender doctrine."    Under this doctrine, after conducting a fact-intensive inquiry, as warranted based on such inquiry, courts find preemption should not apply and do not enforce rate-cap evasion when the sole purpose of a bank's involvement in a lending transaction is to avoid a state's usury laws in favor of a non-bank assignee, who is the actual lender.    Complaint, ¶¶ 77-83.[32]

Based on its own research, the Court observes that this area of the law is complex and evolving.[33]    On review of the pleadings and relevant documents, and under the governing standard for a motion to dismiss, assuming the Debtor has sufficiently pled that WBL, not Axos, is the true lender, it appears this claim should have been brought in state court applying Florida usury law.    *Compare District of Columbia v. Elevate Credit, Inc.*, 554 F. Supp. 3d 125, 138

---

[32] *See e.g., In re Community Bank*, 418 F.3d 277, 295–96 (3d Cir. 2005), Complaint, ¶ 79 (other citations omitted).

[33] WBL also seems to have been involved in many of these suits.

(D.D.C. 2021)(federal preemption not implicated in suit directed against non-chartered bank entity who was alleged true lender, and thus motion for removal to federal court denied).[34]

Every single argument and claim raised by the Debtor in the Complaint, however, disputes the validity of the Foreclosure Judgment and each of those issues appears to have been raised, litigated, and resolved, or should have been raised, through the Florida Lawsuit as evidenced by the Florida Circuit Court's ruling that the foreclosure could proceed under the Mortgage Agreement and Loan Documents against the Property.

As stated in the Complaint, the Debtor seeks relief beyond disallowing the Mortgage Claim or the Proof of Claim or adjusting their respective amounts.   In the Debtor's prayers for relief, she seeks disallowance of "the entire claim" under Florida law because the Mortgage Agreement is "criminally usurious and unenforceable" such that "neither interest nor principal" may be recovered.   The Debtor further seeks a judgment finding that the Foreclosure Judgment is "avoidable" and should be "disallowed."   The problem is that in raising this argument, the Debtor seeks to nullify the Foreclosure Judgment that necessarily involved a determination that WBL SPO I had a valid, enforceable mortgage lien on the Property and was entitled to foreclose.   As mentioned earlier, the Debtor never appealed the Foreclosure Judgment.   *See e.g. In re Bracy*, 2021 WL 6777333

---

[34] The Third Party Complaint does not mention a claim under the True Lender Doctrine.   In her Response (p. 7 of 19), the Debtor states that the Third Party Complaint was dismissed due to lack of jurisdiction based on the state court's finding that Axos was exempt from state usury laws.   This ruling, Debtor contends, represented the Florida Circuit Court's only decision on the usury issue.   The Debtor further states that WBL, the actual maker of the Loan, is neither a federally nor state chartered bank and no finding was made on her defenses or counterclaim as to it.

(Bankr. M.D. Fla. Sept. 30, 2021)(court could not decide subsequent challenge to state court foreclosure judgment as a collateral attack).[35]

Here then, it is evident that each of the Debtor's claims in her Complaint revolve around the validity of the Mortgage Agreement and the Defendants' right to foreclose on the Property. The Debtor's insistence that absence of specific findings striking her Affirmative Defenses or addressing her Counterclaim renders application of *res judicata* herein inappropriate is not persuasive.  In Florida, "a final judgment in a court of competent jurisdiction is absolute and settles all issues actually litigated in a proceeding as well as those issues that could have been litigated."  *Woide, supra*, 705 F. App'x at 835, citing *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1259 (Fla. 2006).

Florida courts routinely hold that final judgment of foreclosure on a mortgage constitutes the "same cause of action" as subsequent claims relating to the foreclosed mortgage or the property it secured.  *U.S. Bank*, *supra*, 2017 WL 6949218, at *6-*7 (citations omitted).  The Debtor's claims here were "either actually raised in, or essentially connected to," the Florida Lawsuit as that action pertained to the same Loan transaction, Mortgage Agreement, and Property.  *See Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1372-74 (M.D. Fla. 2014), *aff'd sub nom. Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc.*, 626 F. App'x 935 (11th Cir. Sept. 16, 2015)(dismissing TILA, quiet title, and declaratory relief claims where lender had already obtained foreclosure judgment on the mortgage that formed the basis of plaintiffs' claims).

---

[35] Defendants' Florida Summary Judgment Motion addresses the Debtor's First Affirmative Defense that the interest rate on the Business Loan Summary violates Fla. Stat. § 687.03 and the Note is illegal and therefore unenforceable, arguing that Nevada law, to the extent not preempted by federal law, not Florida law governs this transaction and under Nevada law, the interest rate for the Loan is not usurious.   Florida Summary Motion, pp. 12-14.

*b.   The Second Claim for Relief*

The Debtor further argues that the Motion should be denied as to the Second Claim for

Relief since claims arising under the Bankruptcy Code asserted in the Second Claim for Relief

could not have been adjudicated in the Florida Lawsuit.   Allegations asserting that the Mortgage

Claim is avoidable under 11 U.S.C. §§ 548(a)(1)(B), 544(b)(1), and 550 as a constructively

fraudulent transfer and should be disallowed under these provisions only exist in bankruptcy.

Such claims only become ripe once a bankruptcy case is filed since they arise under the Bankruptcy

Code.   *See Banks Auto Parts, Inc. v. Banks Invs. I, LC (In re Banks Auto Parts, Inc.)*, 385 B.R.

142, 148 (Bankr. E.D. Va. 2008)(because state court could not have considered claims arising

under Section 548, *res judicata* would not apply to its ruling on matters pending before bankruptcy

court).

There are several problems, however, with the Debtor's argument.   On its face, any claim

based on Section 548 in the Complaint does not appear viable.   Only fraudulent transfers "made

or incurred within 2 years before the filing of the petition" may be avoided under Section 548(a)(1).

Here, the transfer in question, *i.e.,* the Mortgage Loan, closed on April 2, 2019, well over two (2)

years before the Petition Date of August 16, 2022, and any action under Section 548 would thus

be untimely.   Further, even if it were somehow timely, the Debtor likely lacks standing to bring

such a claim, as it is property of the bankruptcy estate.   *See Davis v. Victor Warren Properties,*

*Inc. (In re Davis)*, 216 B.R. 898, 903 (Bankr. N.D. Ga. 1997); *see also* 2 The Hon. Homer Drake,

Jr., The Hon. Paul W. Bonapfel, and Adam M. Goodman, *Chapter 13 Practice and Procedure*,

§ 16.6, at 351 n. 25, 352-53 (2023)(collecting cases and noting split in the case law with majority

position being that trustee holds exclusive authority to exercise such avoidance powers).   No plan

26

has been confirmed in this case and the Debtor's claim under state law to set aside an alleged

wrongful foreclosure remains property of the estate.   *See* 11 U.S.C. §§ 541 & 1306, *see also* 11

U.S.C. § 1327(b); *and see Davis*, *supra*, 216 B.R. at 902 (under Section 323(a) & (b), case trustee

is estate's only representative with capacity to bring suit on potential claims).

As to the claims under Section 544(b)(1), Section 544 does not create a new federal cause

of action or require it be brought only in bankruptcy court so much as it authorizes pursuit by the

trustee of a state law claim held by an actual creditor in a bankruptcy case.   As distinguished from

Section 548, however,

> [m]ost courts have held that § 546(a) thus allows a trustee two years from the entry
> of the order for relief within which to bring a fraudulent transfer avoidance action
> under state law pursuant to § 544, so long as the state law statute of limitations has
> not expired as of the commencement of the bankruptcy case.   This means the
> relevant reach back period begins on the petition date and encompasses all transfers
> within the four years prior, per the FUFTA statute of limitations.

*In re Pearlman*, 460 B.R. 306, 315 (Bankr. M.D. Fla. 2011)(construing Florida law).[36]   The

transaction creating the subject Mortgage did occur within four (4) years of the Petition Date.

However, no such creditor has been identified in connection with such a claim.   In addition, as a

---

[36] Florida law on extinguishment of a cause of action provides as follows:

> A cause of action with respect to a fraudulent transfer or obligation under ss. 726.101–726.112 is
> extinguished unless such action is brought:
>
> (1)  Under s. 726.105(1)(a), within 4 years after the transfer was made or the obligation was incurred
>      or, if later, within 1 year after the transfer or obligation was or could reasonably have been
>      discovered by the claimant;
>
> (2) Under s. 726.105(1)(b) or s. 726.106(1), within 4 years after the transfer was made or the
> obligation was incurred...."

Fla. Stat. § 726.110.

state law claim under Florida's fraudulent transfer statute, this cause for relief could have been presented to and decided by the Florida Circuit Court as part of the Florida Lawsuit where the validity of the Mortgage Agreement was in issue as the basis for foreclosing on the Property.[37] Finally, like the Section 548 claim, a Chapter 13 debtor likely does not have authority to bring a state law claim on behalf of the bankruptcy estate under Section 544(b)(1), as that claim would be brought by the trustee. *See Davis, supra*, 216 B.R. at 903; *Chapter 13 Practice and Procedure*, *supra*, § 14.20, at 91, § 16.6, at 351 n. 25, 352-53.

### IV.    Conclusion

Based on the foregoing discussion, the Court concludes that *res judicata* applies to the Foreclosure Judgment with respect to the First, Third, and Fourth Claims for Relief set forth in the Complaint, and further, that as to the Second Claim for Relief, on its face, any contention for disallowance of the Mortgage Claim based on the avoidance powers of the Bankruptcy Code cited by the Debtor does not appear legally viable as alleged, and it is

**ORDERED** that the Motion is **GRANTED,** and it is further

**ORDERED** that the Complaint is **DISMISSED**.

The Clerk is directed to serve a copy of this Order upon counsel for the Debtor, counsel for the Defendants, the Chapter 13 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**

---

[37] Because *res judicata* applies in this matter, the Court will not decide whether collateral estoppel also applies.

28